FILED
United States Court of Appeals
Tenth Circuit

April 11, 2017

Elisabeth A. Shumaker
Clerk of Court

<u>PUBLISH</u>

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

HAROLD CREIGHTON,

    Defendant - Appellant.

No. 15-8118

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. No. 2:15-CR-00101-SWS-5)**

Christopher A. Crofts, United States Attorney, and Stephanie I. Sprecher, Assistant United States Attorney, Casper, Wyoming, for Plaintiff-Appellee.

Megan L. Hayes, Laramie, Wyoming, for Defendant-Appellant.

Before **HARTZ**, **BALDOCK**, and **HOLMES**, Circuit Judges.[*]

**BALDOCK**, Circuit Judge.

    Defendant Harold Creighton tells us his federal sentence of life imprisonment

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. <u>See</u> Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

for drug trafficking is the result of prosecutorial vindictiveness in violation of the Fifth Amendment's Due Process Clause. Supreme Court precedent tells us otherwise. We exercise jurisdiction under 18 U.S.C. § 3742(a)(1) and affirm the sentence of the district court.

I.

Defendant was indicted on one count of conspiracy to possess with intent to distribute, and to distribute, 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) & 846. Because Defendant had multiple prior felony drug convictions, he qualified for a sentence enhancement that would raise his statutory sentence on conviction from "ten years or more" to "a mandatory term of life imprisonment without release." 21 U.S.C. § 841(b)(1)(A). About four weeks before Defendant's trial, on September 29, 2015, the prosecutor emailed defense counsel. In the email, the prosecutor summarized testimony the Government expected to elicit from cooperating witnesses. The email concluded:

- I believe Mr. Creighton has information that could prove helpful to law enforcement. However, time is of the essence. I have included a proffer letter for your client's consideration. I need to know if he wishes to proffer [*i.e.*, cooperate] by October 2nd, 2015.

- Mr. Creighton is eligible for a sentence enhancement under 21 U.S.C. § 851. I am seeking permission from management to file notice of said enhancement.

ROA Vol. II–Pleadings, at 105–09. In a second email dated October 2, 2015, the

2

prosecutor informed defense counsel that she had received permission to file the § 851 notice of a sentence enhancement and intended to do so on October 5.[1] The prosecutor also indicated she would tender a plea offer that would not account for Defendant's requested cooperation, but reminded counsel: "I believe your client has information that could assist the Government—if he agrees to proffer and his information does substantially assist the Government, we could negotiate a sentence commensurate with his assistance." *Id.* at 110.

Defendant refused to cooperate with the Government or plead guilty. Instead, he exercised his right to a jury trial. A jury found Defendant guilty and, at the Government's behest and over Defendant's objection, the district court sentenced him to life imprisonment: "But the reality is, Mr. Creighton, you have committed offenses that qualify you for the enhancement that Congress has set forth. The notice was provided timely. The underlying offenses qualify, and pursuant to the United States law, a life sentence is required." ROA Vol. III–Transcripts, at 29. On appeal,

---

[1] Section 851, which refers to the notice as an "information," provides in relevant part:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. . . .

21 U.S. C. § 851(a)(1).

Defendant asks us to quash the Government's "Information Filed Pursuant to 21 U.S.C. § 851." This "Information," filed as promised on October 5, notified both Defendant and the district court that if convicted of the pending charge, Defendant should receive a sentence of life imprisonment. According to Defendant, the "Information" resulted from prosecutorial vindictiveness.

## II.

Despite defense counsel's best efforts to convince us otherwise, the doctrine of *stare decisis*, in particular Supreme Court precedent, plainly governs our resolution of Defendant's appeal. In view of such precedent, namely *Bordenkircher v. Hayes*, 434 U.S. 357 (1978), and *United States v. Goodwin*, 457 U.S. 368 (1982), we have long recognized that to prevail on a claim of prosecutorial vindictiveness, a defendant initially "must establish either (1) actual vindictiveness, or (2) a realistic likelihood of vindictiveness which will give rise to a presumption of vindictiveness."[2] *United States v. Raymer*, 941 F.2d 1031, 1040 (10th Cir. 1991). Here Defendant can establish neither. The Supreme Court's decision in *Bordenkircher* squarely precludes a finding of actual vindictiveness in this case, while this same decision in concert with *Goodwin* precludes us on the undisputed

---

[2] The parties dispute whether Defendant preserved his constitutional claim in the district court. Defendant insists we review his claim de novo while the Government says plain error review is appropriate. But the parties' dispute over the applicable standard is academic. Our decision that Defendant's claim of prosecutorial vindictiveness fails as a matter of law for lack of proof sounds the death knell of his claim even under the more favorable standard of de novo review.

4

facts presented from recognizing any presumption of vindictiveness that the Government must overcome.

## A.

In *Bordenkircher*, the Supreme Court addressed whether the Fourteenth Amendment's Due Process Clause was violated "when a state prosecutor carries out a *threat* made during plea negotiations to reindict the accused on more serious charges if he does not plead guilty to the offense with which he was originally charged." 434 U.S. at 358 (emphasis added). There, the state prosecutor stated that if the defendant did not plead guilty to uttering a forged instrument in the amount of $ 88.30 and save "the court the inconvenience and necessity of a trial, he would return to the grand jury to seek an indictment under the Kentucky Habitual Criminal Act, . . . which would subject Hayes to a mandatory sentence of life imprisonment by reason of his two prior felony convictions." *Id.* at 358–59 (internal footnote and quotation marks omitted).

The Supreme Court held the prosecutor did not act vindictively because the prosecutor did "no more than openly present[] the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution." *Id.* at 365.

> While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices is an inevitable—and permissible— attribute of any legitimate system which tolerates and encourages the negotiation of pleas. . . .

5

> It is not disputed here that [the defendant] was properly chargeable under the recidivist statute, since he had in fact been convicted of two previous felonies. In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring . . . generally rests entirely in [the prosecutor's] discretion.

*Id.* at 364.

*Bordenkircher* is indistinguishable from the present case insofar as it bears on Defendant's claim of actual vindictiveness. Here, the record indicates the federal prosecutor did nothing more than inform Defendant of his eligibility for an enhanced sentence while suggesting—implicitly rather than overtly—that her pursuit of any such enhancement would be negotiable if Defendant chose to cooperate with the Government. *See United States v. Sarracino*, 340 F.3d 1148, 1178 & n.12 (10th Cir. 2003) (relying on *Bordenkircher* to reject a defendant's argument that the prosecution acted vindictively in changing a charge of manslaughter to murder based on his refusal to cooperate). While the prosecutor apparently waited until plea negotiations commenced to inform Defendant of his eligibility for an enhancement, the timing of her decision does not assist Defendant. While the prosecutor did not actually file the § 851 notice until after plea discussions had ended, she clearly expressed her intention to do so in her initial email at the outset of those discussions. "This is not a situation . . . where the prosecutor without notice brought an additional and more serious charge after plea negotiations relating only to the original indictment had ended with the defendant's insistence on not pleading guilty."

6

*Bordenkircher*, 434 U.S. at 360–61. This case would be no different if the prosecutor filed a § 851 recidivist information at the outset of the prosecution and offered to drop her pursuit of the sentence enhancement as part of a plea bargain. *See id.*

B.

Unable to establish actual vindictiveness on the part of the prosecutor, Defendant says the circumstances of his case should give rise to a presumption of vindictiveness that the Government must rebut. Notably, neither the Supreme Court nor the Tenth Circuit has ever *applied* such a presumption in a pretrial setting. In *Goodwin*, the Supreme Court was asked to do so but declined. There, a federal park officer charged the defendant "with several misdemeanor and petty offenses, including assault." *Goodwin*, 457 U.S. at 370. When the defendant demanded a jury trial, the case was transferred from a magistrate judge to a district judge. The prosecutor newly assigned to the case obtained a four-count indictment against the defendant that included one felony count of forcibly assaulting a federal officer. The question presented was "whether a presumption that has been used to evaluate a judicial or prosecutorial response to a criminal defendant's exercise of a right to be retried after he had been convicted should also be applied to evaluate a prosecutor's pretrial response to a defendant's demand for a jury trial." *Id.* at 369–70.

In refusing to apply a presumption, the Supreme Court offered "good reason" for courts "to be cautious before adopting an inflexible presumption of prosecutorial

7

vindictiveness in a pretrial setting." *Id.* at 381. The Court explained that a case involving "the State's unilateral imposition of a penalty upon a defendant who had chosen to exercise a legal right to attack his original conviction" presented "a situation very different from the give-and-take negotiation common in plea bargaining between the prosecution and defense, which arguably possess relatively equal bargaining power."[3] *Id.* at 377–78 (quoting *Bordenkircher*, 434 U.S. at 362). "[A] change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision." *Id.* at 381. In the pretrial setting "[i]t is unrealistic to assume that a prosecutor's probable response to [commonplace pretrial posturing] is to seek to penalize and deter." *Id.* at 381. In other words, "changes in the charging decision that occur in the context of plea negotiation are an inaccurate measure of improper prosecutorial 'vindictiveness.'" *Id.* at 379–80.

> A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. As we made clear in *Bordenkircher*, the initial charges filed

---

[3] See *North Carolina v. Pearce*, 395 U.S. 711 (1969), and *Blackledge v. Perry*, 417 U.S. 21 (1974). In *Pearce* and *Blackledge*, the defendants exercised their rights to appeal, which resulted in retrials after prior trials and convictions. In each case, the defendant's punishment was greater the second time around. The Supreme Court held the likelihood of vindictiveness on the part of either the trial court or prosecutor under such circumstances justified a presumption that would free the defendant of apprehension of such a retaliatory motive. The Government could overcome the presumption "only by objective information in the record justifying the increased [punishment]." *Goodwin*, 457 U.S. at 374.

8

by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.

*Id.* at 382. The Supreme Court concluded a presumption of vindictiveness in the pretrial setting was unwarranted because actual vindictiveness was "so *unlikely*." *Id.* at 384 (emphasis in original).

Defendant asserts that "threatening to file a § 851 information during plea negotiations and then filing it 20 days before trial and immediately after [he] exercised his right to trial," if not proof of actual vindictiveness, surely raises the appearance of vindictiveness, necessarily entitling him to a presumption of such. Aplt's Br. at 5. To be sure, the Tenth Circuit has "rejected the idea that a presumption of vindictiveness may never arise in the pretrial setting." *Raymer*, 941 F.2d at 1040. Citing both *Bordenkircher* and *Goodwin*, however, we observed in *Sarracino* that "[m]erely by the appearance of vindictive motives, vindictiveness may not be presumed." *Sarracino*, 340 F.3d at 1177–78. Only "in those pretrial decisions which are *genuinely distinguishable* from *Goodwin* and *Bordenkircher*, [will] we look at the totality of the objective circumstances to decide whether a realistic possibility of vindictive prosecution exists." *Raymer*, 941 F.2d at 1040. (emphasis added). Defendant's argument turns entirely on the timing of the prosecutor's actions. Unfortunately for Defendant, the binding precedent instructs us that timing alone is not enough to give rise to a presumption of prosecutorial vindictiveness *in the pretrial settting*. "[T]he Supreme Court squarely has held that

9

a prosecutor may threaten to charge a greater offense if a defendant will not plead guilty to a lesser one, as long as the prosecutor has probable cause to believe that the defendant committed the greater offense." *Sarracino*, 340 F.3d at 1178 (citing *Bordenkircher*). This is no different than saying a prosecutor in the course of plea discussions may threaten to subject a defendant to a sentencing enhancement if the defendant declines to cooperate with the Government, as long as the defendant qualifies for the enhancement.

No one in this case disputes that Defendant qualified for the sentencing enhancement provided for in 21 U.S.C. § 841(b)(1)(A). Nor would anyone disagree that the enhancement Defendant has suffered, however justifiable, is a harsh one. But Defendant's subjection to such enhancement is a matter of congressional prerogative coupled with prosecutorial discretion. His reliance on what is or, what was, the charging policy of the Department of Justice is simply beside the point. The law is what matters here. And the law is that "in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Bordenkircher*, 434 U.S. at 363. A "claim of vindictive prosecution cannot insulate the defendant from the lawful consequences of his tactical choices." *Raymer*, 941 F.2d at 1042.

The circumstances of the present case simply do not support Defendant's argument that his case is distinguishable in a meaningful way from *Bordenkircher* and *Goodwin*. Accordingly, the sentence of the district court is

10

AFFIRMED.