**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 29 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

KENNETH L. THOMPSON,

Defendant-Appellant.

No. 96-3174
(D.C. No. 95-20066-GTV)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Robin D. Fowler, Assistant United States Attorney (Jackie N. Williams, United States Attorney with him on the brief), Kansas City, Kansas, for Plaintiff-Appellee.

Carl E. Cornwall (Lindsey P. Erickson with him on the briefs) of Cornwell & Edmonds, Overland Park, Kansas, for Defendant-Appellant.

Before **BRORBY, BRISCOE** and **MURPHY**, Circuit Judges.

In this direct appeal, Kenneth L. Thompson appeals his conviction of two counts of possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1994). He raises six issues on appeal, which are all

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

without merit.  Accordingly, we affirm Mr. Thompson's conviction.

Before addressing Mr. Thompson's claims of error, we briefly set forth the general factual background.  On the evening of May 31, 1995, officers of the Kansas City, Kansas police department, accompanied by an agent of the federal Bureau of Alcohol, Tobacco and Firearms, approached Mr. Thompson in the front yard of his residence.  Their intent was to investigate possible illicit narcotic activity at that location.  According to the officers' testimony, Mr. Thompson was cooperative with the officers and consented to a search of the residence and its surroundings.  While inside the house, one of the officers noticed Mr. Thompson put something in the kitchen sink, which, upon investigation, the officers found was a small bag of brownish white powder they suspected to be methamphetamine.  During their search, the officers also found, *inter alia*, approximately $4,600 in Mr. Thompson's pockets, approximately $10,000 in a safe in an upstairs bedroom, and in one of Mr. Thompson's automobiles, seven ounces of methamphetamine, an electronic scale, and a police scanner.  According to officers' testimony at trial, officers did not arrest Mr. Thompson that evening.  However, at about 1:20 the next morning, officers did read him his *Miranda* rights and obtained a recorded statement from him in which he admits purchasing, possessing, using, and selling quantities of methamphetamine.

On the morning of October 31, 1995, several Kansas City police officers went to Mr. Thompson's residence to place him under arrest pursuant to a federal arrest warrant. Finding him there, they advised him of the arrest warrant, and Mr. Thompson invited them into the house. After being read his *Miranda* rights and consenting to a search of the premises, Mr. Thompson showed the officers a bag containing approximately one pound of methamphetamine. The officers also discovered approximately $2,500 on Mr. Thompson's person. The first count on which Mr. Thompson was convicted was premised on the seven ounces of methamphetamine officers discovered on May 31; the second count was premised on the pound of methamphetamine officers found on October 31.

On June 1, 1995, the Kansas Department of Revenue assessed a $49,000 tax against Mr. Thompson based upon his possession on May 31 of 245 grams of methamphetamine. It also charged Mr. Thompson a $49,000 penalty for failing to affix Kansas drug tax stamps to the methamphetamine. On March 13, 1996, the Kansas Department of Revenue assessed $125,200 in taxes against Mr. Thompson based upon his possession on October 31, 1995 of 626 grams of methamphetamine, along with a $125,200 penalty for failing to affix drug tax stamps to the narcotics.

Mr. Thompson's first argument on appeal is that the district court lacked jurisdiction to convict him under 21 U.S.C. § 841(a)(1), as that statute is unconstitutional and violates the Tenth Amendment. He relies largely on *United States v. Lopez*, 514 U.S. 549 (1995), in which the Supreme Court "struck down [as unconstitutional] the Gun-Free School Zones Act of 1990, a congressional act making it a crime knowingly to possess a gun in a school zone." *United States v. Wacker*, 72 F.3d 1453, 1475 (10th Cir.), *cert. denied*, 117 S. Ct. 136 (1996). However, in *Wacker*, 72 F.3d at 1475, we squarely rejected the argument that 28 U.S.C. § 841(a)(1) violates the Tenth Amendment; therefore, Mr. Thompson's claim must fail. *See*, *e.g.*, *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) (appellate panel is "bound by the precedent of prior panels"), *cert. denied*, 513 U.S. 807 (1994).

Second, Mr. Thompson claims the evidence at trial was insufficient to support his convictions for intent to distribute methamphetamine.

> [I]n reviewing the sufficiency of the evidence ... [we] review the record *de novo* "and ask only whether, taking the evidence -- 'both direct and circumstantial, together with the reasonable inferences to be drawn therefrom' -- in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt."

*United States v. Voss*, 82 F.3d 1521, 1524-25 (10th Cir.) (quoting *United States v. Urena*, 27 F.3d 1487, 1489 (10th Cir.), *cert. denied*, 513 U.S. 977 (1994)), *cert.*

*denied*, 117 S. Ct. 226 (1996).

In his appellate brief, Mr. Thompson conveniently fails to mention the tape-recorded statement he gave in the early hours of June 1 that was played for the jury at trial. In that statement he admits the following: buying the seven ounces of methamphetamine for $8,000 from his source; much of the cash found at his house that night was derived from the sale of narcotics; he had been selling methamphetamine and other drugs for about six or seven years; and that he frequently purchased four-ounce amounts of methamphetamine for resale. Mr. Thompson's statement, along with the discovery of substantial amounts of cash derived from narcotics trafficking and an electronic scale, is sufficient to support his first conviction of possession with intent to distribute.

Additionally, at trial the government presented testimony showing that where a person intends only to personally use methamphetamine rather than to resell it, he or she usually makes purchases in amounts of less than one ounce, typically only in quarter or half gram amounts. From this testimony, a reasonable jury could infer Mr. Thompson intended the pound of methamphetamine found in his possession on October 31 for resale rather than personal use. That inference, along with the $2,500 found on Mr. Thompson's person and his previous

admissions, is sufficient to support Mr. Thompson's second conviction.

In his third claim of error, Mr. Thompson contends his trial counsel provided ineffective representation by failing to request a jury instruction on the lesser included offense of possession of methamphetamine. "Ineffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal." *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc). Direct appeal of such claims generally prevents the district court from examining the matter. *Id.* We are thus denied the benefit of the district court's insight, and often the accused attorney lacks an the opportunity to explain his or her actions. *Id.*

Although in rare cases where the record is sufficiently well-developed we may review such allegations on direct appeal, *id.*; *e.g.*, *United States v. Smith*, 10 F.3d 724, 727-29 (10th Cir. 1993), here the record is not sufficiently developed. On appeal, Mr. Thompson asserts the entirety of trial counsel's actions show counsel's goal was to prove Mr. Thompson was a mere user of narcotics, rather than a distributor, and therefore counsel's failure to request a jury instruction on the lesser included offense was a mistake rendering his representation ineffective. However, from the record before us it is impossible to tell whether trial counsel

indeed accidentally failed to request the jury instruction, or whether his trial strategy was to go "all or nothing," hoping to show Mr. Thompson did not distribute drugs and thereby gain him a full acquittal. *See Smith*, 10 F.3d at 727-29 (defense counsel's affidavit admitting overlooking the availability of lesser-included offense rather than making conscious strategy decision to forego that avenue rendered record sufficient to consider issue of ineffective assistance of counsel on direct appeal). Accordingly, we decline to review this claim at the present time.

Fourth, Mr. Thompson claims he did not voluntarily consent to the May 31 and October 31 police searches and therefore the district court erred in failing to suppress the evidence resulting from those searches. He also contends that even if he validly consented to the searches, the May 31 search of his automobile occurred prior to his giving consent and, because he did not consent to the search of his automobile, exceeded the scope of his consent.

> When reviewing a district court decision on suppression of evidence, we must accept the court's findings of fact unless, viewing the evidence in the light most favorable to the court's findings, we conclude the findings were clearly erroneous. Evaluation of the credibility of witnesses, the weight to be given the evidence, and inferences to be drawn from the evidence are for the district court. However, the ultimate determination of whether a search and seizure were reasonable under the Fourth Amendment is subject to de novo review.

*United States v. Hernandez*, 93 F.3d 1493, 1498 (10th Cir. 1996). The government has the burden of proving valid consent to a warrantless search. *United States v. Cody*, 7 F.3d 1523, 1526 (10th Cir. 1993). It "must proffer 'clear and positive testimony that consent was unequivocal and specific and freely and intelligently given.' Furthermore, the government must prove that this consent was given without implied or express duress or coercion." *United States v. Angelo-Fernandez*, 53 F.3d 1177, 1180 (10th Cir. 1995) (quoting *United States v. Dewitt*, 946 F.2d 1497, 1500 (10th Cir. 1991), *cert. denied*, 502 U.S. 1118 (1992)) (citations omitted).

The government produced abundant evidence Mr. Thompson validly consented both to the searches and to their scope. Mr. Thompson signed consent-to-search forms on May 31 and on October 31, both of which state the time of consent, and on each consent form the time listed is about the same time the police encounters began. The May 31 form stated the search was to be of the "residence and curtilage in its entirety." The district court found Mr. Thompson orally consented to a search of the automobile, and, as during Mr. Thompson's May 31 statement he admitted giving such consent, we cannot conclude the district court's finding is clearly erroneous. Because Mr. Thompson orally consented, we need not decide whether the search of the automobile was within

the scope of the written consent form. Additionally, in his statement of June 1, Mr. Thompson admits consenting to the May 31 search of his residence. Police officers also testified regarding the voluntary nature of Mr. Thompson's consents, and the district court found their testimony credible and consistent with the consent forms and Mr. Thompson's statement. Given this evidence, the district court's findings, and our standard of review, we hold Mr. Thompson validly consented to both searches, and therefore affirm the district court's refusal to suppress the resulting evidence.

In his fifth claim of error, Mr. Thompson asserts the sentence imposed by the district court violates his Fifth Amendment right against double jeopardy. Specifically, Mr. Thompson argues jeopardy attached when the Kansas Department of Revenue imposed approximately $150,000 as taxes on the methamphetamine and imposed approximately $150,000 in penalties for failing to affix Kansas drug tax stamps to the methamphetamine. Accordingly, he contends the subsequent federal prosecution placed him in double jeopardy. We review double jeopardy claims *de novo*. *United States v. Raymer*, 941 F.2d 1031, 1037 (10th Cir. 1991).

This argument also fails. It is axiomatic that prosecution or punishment by

separate sovereigns of a defendant for the same conduct does not violate the Fifth Amendment's Double Jeopardy Clause. *Raymer*, 941 F.2d at 1037. The Kansas state government and the federal government are separate sovereigns. *See United States v. Padilla*, 589 F.2d 481, 484 (10th Cir. 1978). Therefore, both sovereigns' prosecution or punishment of Mr. Thompson for his narcotics activities did not violate his right to be free from double jeopardy. *Raymer*, 941 F.2d at 1037; *Padilla*, 589 F.2d at 484-85.

Admittedly, "[a] possible exception to the dual sovereignty rule might exist where a federal or state prosecution was merely a tool manipulated by the other sovereign to revive a prosecution barred on federal constitutional grounds," *i.e.*, a "sham prosecution" covering for an otherwise impermissible state or federal prosecution. *Raymer*, 941 F.2d at 1037. However, "[w]hen a defendant claims that federal and state officials are not acting as dual sovereigns, he has a substantial burden of proving one sovereign is so dominated by the actions of the other that the former is not acting of its own volition." *Id.* Relatively minor federal involvement is sufficient to rebut a defendant's claim a federal prosecution is in actuality a "sham" for an otherwise impermissible state prosecution. *See Raymer*, 941 F.2d at 1036-39; *Padilla*, 589 F.2d at 485 (Logan, J., concurring).

Mr. Thompson has not met his "substantial burden" of proving the federal sovereign did not act of its own volition. The group of officers involved in the May 31 incident included a federal agent, and the October 31 arrest was pursuant to a federal arrest warrant. That is sufficient federal involvement to preclude Mr. Thompson from establishing a sham prosecution. *See Raymer*, 941 F.2d at 1036-39; *Padilla*, 589 F.2d at 485 (Logan, J., concurring).

At the conclusion of his double jeopardy argument, Mr. Thompson states: "In the alternative, defendant requests that the Court find that defendant's Eighth Amendment constitutional right against Excessive Fines was violated." Mr. Thompson fails to provide legal authority or reasoned argument supporting this claim. Accordingly, we decline to consider it. *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (perfunctory complaints that fail to frame and develop an issue are insufficient to invoke appellate review); *Brownlee v. Lear Siegler Management Servs. Corp.*, 15 F.3d 976, 977-78 (10th Cir.) (conclusory references to district court error without sufficient citation to authority is not adequate appellate argument), *cert. denied*, 114 U.S. 1237 (1994); *Primas v. City of Okla. City*, 958 F.2d 1506, 1511 (10th Cir. 1992) (party has duty to cite authority for any argument raised).

-11-

Lastly, Mr. Thompson asserts the government "violated [Fed. R. Crim. P.] 5(a) by waiting five months from [his] arrest on May 31, 1995 until [his] subsequent arrest on October 31, 1995 to bring [him] before a federal magistrate." Fed. R. Crim. P. 5(a) generally requires officers who make an arrest to take the arrestee "without unnecessary delay before the nearest available federal magistrate judge." Because Mr. Thompson did not raise this claim before the district court, our review is limited to plain error. Fed. R. Crim. P. 52(b); *see, e.g.*, *United States v. Mitchell*, 783 F.2d 971, 976 (10th Cir.), *cert. denied*, 479 U.S. 860 (1986). Reversal on the grounds of plain error is at our discretion, and we do not exercise that discretion "unless the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Olano*, 507 U.S. 725, 732 (1993) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)). "However, as a prerequisite to plain error review under Rule 52(b), [we] must first find that an 'error' indeed has been committed." *United States v. Gomez*, 67 F.3d 1515, 1520 (10th Cir. 1995), *cert. denied*, 116 S. Ct. 737 (1996).

Although Mr. Thompson asserts his arrest occurred May 31, 1995, the government contends Mr. Thompson was not arrested until October 31. Therefore, the government argues, it did not violate Rule 5(a) by taking Mr. Thompson to a magistrate judge on November 1. "Rule 5(a) becomes applicable

once the accused is taken into federal custody." *United States v. Torres*, 663 F.2d 1019, 1023 (10th Cir. 1981), *cert. denied*, 456 U.S. 973 (1982). Officer testimony at Mr. Thompson's trial supports the government's claim Mr. Thompson was not arrested until October 31. To support his claim of arrest on May 31, the only evidence to which Mr. Thompson points is a statement a Kansas City police officer made during grand jury proceedings. In particular, during the proceedings, the prosecutor asked whether the testifying officer participated in the arrest of Mr. Thompson "in the late evening hours of June 30 and the early morning hours of July 1" of 1995.[1] The officer answered "Yes, I did." Notably, the government, both in its brief and at oral argument, asserted this statement was never admitted into evidence before the district court, and nowhere does the record, or Mr. Thompson, contradict the government's assertion. Accordingly, we give little weight to the officer's grand jury statement. *See Aero-Medical, Inc. v. United States*, 23 F.3d 328, 329 n.2 (10th Cir. 1994) (appellate court strikes documents included in the appendix that were not before the district court); *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1549 n.1 (10th Cir. 1992) (appellate court will not review documents not before the district court when its ruling was made). Mr. Thompson fails to present any other tangible evidence of

---

[1] We presume the prosecutor erred and the question actually referred to the events of May 31 and June 1, 1995.

his alleged arrest, such as arrest or booking documents.  On the basis of the record before us, we do not find Mr. Thompson was arrested on May 31 and therefore his Rule 5(a) claim fails.

We **DISMISS** Mr. Thompson's ineffective assistance of counsel claim.  We **AFFIRM** the judgment of the district court on all other issues.

**Entered for the Court**

**WADE BRORBY**
United States Circuit Judge