**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 23, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DARWIN BROWN,

     Petitioner-Appellant,

v.

WYOMING DEPARTMENT OF
CORRECTIONS STATE
PENITENTIARY WARDEN, also
known as SCOTT ABBOTT, in his
official capacity,

     Respondent-Appellee.

No. 06-8095

(D.C. No. 05-CV-300-B)
(D. Wyoming)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **BRISCOE, McKAY,** and **McCONNELL**, Circuit Judges.

Darwin Brown (Brown), a state prisoner proceeding pro se, requests a

certificate of appealability (COA) to appeal the district court's order denying his

28 U.S.C. § 2241 petition for writ of habeas corpus. Because Brown has not

made "a substantial showing of the denial of a constitutional right," 28 U.S.C. §

2253(c)(2), we deny his request for a COA and dismiss the matter.

---

[*]This order is not binding precedent, except under the doctrines of law of the
case, res judicata, and collateral estoppel.

I

On April 20, 2005, Brown was involved in a fight with another inmate of the Wyoming State Penitentiary (WSP) which grew into a larger incident. Brown was charged with three major violations of the WSP inmate's rules: (1) assault, (2) battery, and (3) organizing, encouraging, or participating in a work stoppage and/or other disruptive demonstration or practice. A disciplinary hearing was held, Brown was found guilty of all three charges, and was sentenced to eighteen months of segregation and a loss of "good time" credits. Brown appealed to the Warden, arguing in pertinent part that the notice of charges was vague, thus denying him due process. The Warden agreed the charges were vague, ordered them vacated and rewritten, and ordered a second disciplinary hearing.

On August 31, 2005, Brown received his new notice of charges, and, in addition to the three major charges in the original notice, two additional general charges were added: (1) involvement in spontaneous fighting with another inmate, and (2) tampering with evidence or influencing a witness involved in any disciplinary process, not amounting to threats. A new and different disciplinary committee was formed and found Brown guilty of assault, battery, disruption, and tampering, but not guilty of spontaneous fighting. Brown was sanctioned with thirty months of segregation and loss of good time credits. Brown again appealed to the Warden, arguing that the new charges added before the second hearing were an act of retaliation for the success of his first appeal, arguing further that

the second notice of the charges was inadequate, and alleging numerous additional violations of due process. The Warden reduced Brown's loss of good time to one year, but otherwise affirmed the second disciplinary committee's sanction.

Brown then filed a 28 U.S.C. § 2254 petition in federal district court claiming unlawful retaliation and violations of his right to due process, essentially seeking the vacation of all disciplinary charges and sanctions. The district court entered an order correctly construing the petition as a 28 U.S.C. § 2241 petition. After hearing oral arguments on the parties' cross-motions for summary judgment, reviewing the transcript of Brown's second disciplinary hearing, and watching the videotape of the incident in question, the district court entered an order denying Brown's petition. Brown requests a COA, and has filed a notice of appeal regarding the denial of his § 2241 petition. We construe Brown's appellate brief in support of his notice of appeal as additional argument in support of his application for a COA.

II

Brown may appeal the denial of his § 2241 petition only if a COA is issued. See 28 U.S.C. § 2253(c)(1); Montez v. McKinna, 208 F.3d 862, 867 (10th Cir. 2000). A COA will issue only if Brown makes "a substantial showing of the denial of a constitutional right." 18 U.S.C. § 2253(c)(2). To make the requisite showing, he must demonstrate that "reasonable jurists could debate whether . . .

the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." See Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (citations omitted).

Brown makes roughly twelve arguments in support of his request for a COA: (1) unlawful retaliation, (2) insufficient notice of charges, (3) violation of WSP inmate prison regulations, (4) fraudulent notice of disciplinary extension, (5) wrongful denial of access to evidence, (6) improper reliance on the videotape of the incident, (7) failure to provide an impartial review, (8) insufficient evidence, (9) self-defense, (10) denial of access to the courts, (11) failure to develop facts underlying the disciplinary incident, and (12) wrongful denial of his motion to alter or amend the judgment.

To begin, we note that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). To satisfy due process in a prison disciplinary proceeding, "the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985). There must also be "some evidence in the record" supporting the charge. Id. at

454-57. We conclude that these minimal procedural requirements were satisfied here and that no jurist could reasonably assert that Brown has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

As for the specific objections Brown asserts, they do not deserve encouragement to proceed further.[1] First, to prove vindictive prosecution, Brown had to show either (1) actual vindictiveness, or (2) a reasonable likelihood of vindictiveness, which raises a presumption of vindictiveness. United States v. Raymer, 941 F.2d 1031, 1040 (10th Cir. 1991). Brown attempted to establish the latter, but failed and no reasonable jurist could conclude otherwise. Specifically, a prisoner claiming retaliation must "allege specific facts showing retaliation [on account] of the exercise of the prisoner's constitutional rights," Frazier v. Dubois, 922 F.2d 560, 562 n.1 (10th Cir. 1990), and he "must prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place," Smith v. Maschner, 899 F.2d 940, 949-50 (10th Cir. 1990). The record does not indicate that either the conduct of the charging officer in bringing two additional charges in the second disciplinary hearing, or the second disciplinary committee's more substantial sanction, "would not have occurred but for the hostility or punitive animus toward the defendant *because he exercised his specific legal right*." United States v. Contreras, 108

---

[1] We note that alleged violations of due process in the first disciplinary hearing were mooted by Brown's success in having his initial charges vacated.

F.3d 1255, 1262 (10th Cir. 1997) (emphasis in original). Also, there is no evidence of disparate treatment. Brown has not made the requisite showing for issuance of a COA on this claim.

Second, by setting forth the offense codes charged, and a brief description of the charged conduct, prison officials provided Brown with sufficient notice to allow him to defend against these charges at the second disciplinary hearing. See, e.g., Whitford v. Boglino, 63 F.3d 527, 534 (7th Cir. 1995) (concluding notice was sufficient where prisoner had been given the number of each disciplinary rule he was alleged to have violated, and was given a brief statement describing the charged conduct). No reasonable jurist could conclude otherwise, thus, Brown's allegation of a vague and deficient notice does not require further scrutiny. Prison officials also provided a satisfactory written statement of the evidence relied upon – the videotape, Brown's testimony, testimony of the charging officer, and an officer report – and the reasons for the disciplinary action – acts of assault, battery, disruption, and tampering. Thus, a COA is not merited on these claims as well.

Likewise, no reasonable jurist could conclude that Brown's claim that prison officials deprived him of due process by violating internal prison regulations rises to the level of a due process violation. Prison regulations are "primarily designed to guide correctional officials in the administration of a prison. [They are] not designed to confer rights on inmates . . . ." Sandin v.

-6-

Conner, 515 U.S. 472, 481-82 (1995). Although states may create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484 (citations omitted). This case does not present a situation where "a prison regulation or practice offends a fundamental constitutional guarantee . . . ." Turner v. Safley, 482 U.S. 78, 84 (1987). The process due here under the United States Constitution is measured by the Due Process Clause, not prison regulations. See Hulen v. Yates, 322 F.3d 1229, 1247 (10th Cir. 2003) ("[O]nce the property right is established, it is purely a matter of federal constitutional law whether the procedure afforded was adequate."); see also Shakur v. Selsky, 391 F.3d 106, 119 (2d Cir. 2004) (concluding that "regardless of state procedural guarantees, the *only* process due an inmate is that minimal process guaranteed by the Constitution"). Because the alleged violations of WSP procedural regulations do not impose "atypical and significant hardship on [Brown] in relation to the ordinary incidents of prison life," Sandin, 515 U.S. at 484, we deny Brown's request for a COA as to this issue.

Fourth, Brown's claim that he was deprived of an opportunity to call witnesses and present documentary evidence in his defense does not deserve further consideration. In Wolff, the Supreme Court acknowledged that an "inmate facing disciplinary proceedings should be allowed to call witnesses and present

documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." 418 U.S. at 566. Here, no reasonable jurist could conclude that the WSP disciplinary committee violated Brown's due process rights by forbidding him from viewing the video tape, or failing to provide him the names of prisoners present at the incident, given a reasonable concern that such information could endanger other prisoners.[2]

Also, a prisoner cannot maintain a due process claim for failure to permit witness testimony if he fails to show that the testimony "would have affected the outcome of his case." Chesson v. Jacquez, 986 F.2d 363, 366 (10th Cir. 1993). Absent an indication that the testimony of Major Moore at the second disciplinary hearing, or that having access to the contents of Major Moore's testimony at the first proceeding, would have somehow affected Brown's second disciplinary proceeding, no reasonable jurist could consider the aforementioned restrictions a violation of Brown's right to call witnesses and present evidence in his defense.

Likewise, prison officials afforded Brown an adequate hearing, and the Due Process Clause does not require a second opportunity before a federal court to contest the disciplinary charges via an evidentiary hearing. See Hill, 472 U.S. at 455-56 ("Ascertaining whether this [due process] standard is satisfied does not require examination of the entire record, independent assessment of the credibility

---

[2] Brown also argues that WSP would not provide him with a summary of the videotape, however, there is no indication that Brown requested such a summary.

of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."). In light of this standard, the record, and because no reasonable jurist could conclude that Brown is entitled to the relief sought, we also deny Brown's request for a COA as to this issue.

Fifth, Brown challenges the disciplinary committee's partial reliance on the videotape of the altercation in determining his guilt. He argues the disciplinary committee did not view the videotape, and that the quality of the videotape was too degraded to identify the inmates in the underlying altercation. However, the record indicates that the tape existed, that it was sufficiently clear to identify Brown, that it was relied upon by the disciplinary committee, and that it did not corroborate Brown's self-defense theory. Moreover, the district court reached the same conclusion upon review. In short, jurists could not reasonably debate that there is "some evidence" supporting the disciplinary committee's determination.

Sixth, Brown claims that he was denied an impartial disciplinary hearing because the prison official who reviewed his second disciplinary appeal, Jerry Steele, was an alleged witness to the incident upon which his charges are based. Brown also claims that a document signed by Steele, which notified Brown that his second disciplinary hearing was to be rescheduled, was somehow "fraudulent" and violated his due process rights. However, there is no evidence in the record supporting either assertion, but only unsupported allegations by Brown of Steele's

-9-

alleged misconduct. We deny Brown's request for a COA on these claims as well.

Brown next asserts that the punishment meted out by the disciplinary committee violated the Due Process Clause because his involvement in the altercation in question was limited to self-defense. Brown claims that WSP medical records and investigative reports establish that he suffered multiple stab wounds from the April 20, 2005 incident, thereby establishing that he was acting in self-defense. Nonetheless, this documentary evidence is not in the record, nor is there an allegation these documents, assuming they exist, were requested by, and denied to, Brown. More importantly, this argument is simply another way to challenge the disciplinary committee's determination that Brown committed the prohibited acts, and we have already concluded that a reasonable jurist would conclude that "some evidence" supports that decision.

As for Brown's claim that he was denied access to the courts, we see no arguable constitutional violation in the manner in which the district court conducted its July 21, 2006 hearing on the parties' cross motions for summary judgment, at which Brown appeared telephonically. During that hearing, the district court became aware that the WSP intended to charge Brown the costs associated with his telephone call. Soon thereafter, the district court entered an order, in pertinent part, permanently enjoining the WSP from charging any inmates, including Brown, to appear by telephone in court ordered proceedings.

-10-

Brown filed a motion with the district court requesting, in part, an opportunity to supplement the argument he made at the hearing, which the district court denied. Brown now argues that WSP employees "distracted him from persuasively and fully argu[ing] the merits of [his] claims . . . ." Appellant's Br., p. 22. The record does not bear this out and we conclude there is no basis for further consideration of Brown's access-to-the-court claim.

Finally, no reasonable jurist could find merit in Brown's unsupported assertions that the disciplinary committee and the district court somehow failed to discharge an affirmative duty to "have [Brown's] facts fully developed." Id. at 2. Likewise, Brown's vague and conclusory argument that the district court erred in failing to address the substance of his motion to alter or amend the district court's denial of his petition is not deserving of additional consideration.

In sum, Brown has failed to make a substantial showing of the denial of a constitutional right. Accordingly, the application for a COA is DENIED. The motion to proceed in forma pauperis is DENIED. The appeal is DISMISSED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

-11-